## King *against* The Hartford Insurance Company.

THIS was an action upon a policy of insurance on the ship *Governour Griswold*, underwritten for 10,000 dollars, in the same form, and upon the same voyage, as that before stated in the case of *King* v. *The Middletown Insurance Company.*(a) The cause was tried at *Hartford, February* term 1815, before *Trumbull, Baldwin* and *Ingersoll*, Js.

Where the captain of a vessel insured to her port of discharge in the *United States,* dismissed and paid off at her port of arrival all the hands on board except the mate and cook, and immediately shipped an equal number of good hands in their place ; held that these facts did not conduce to prove a termination of the voyage at such port of arrival.

A vessel while proceeding from *New-York* for *Middletown*, struck violently upon the rocks in *Hurl-gate*, and was greatly injured ; the owner abandoned ; and immediately afterwards, upon his receiving intelligence that she was likely to be got off soon, the insurers authorized him to bring her into *Connecticut* river, if practicable, and to do whatever should be needful, *without militating against the abandonment :* Held that this agreement did not affect the owner's claim for a total loss.

The sails, rigging, anchors, &c. saved from a vessel thrown upon the rocks, and abandoned, are not a fund in the hands of the insured to defray the expense of getting her off.

In an action on a policy of insurance, it appeared on the trial, that the vessel insured having been got off the rocks in *Hurl-gate*, and brought to *New-York*, was set up for sale at auction by the captain, which, as the plaintiff contended, was done by the advice and direction of the port-wardens ; that she was bid off by a third person without the plaintiff's knowledge or consent ; and that she was soon afterwards delivered to the plaintiff, by the purchaser, under whom the plaintiff had ever since claimed and held her as his own  It did not appear that any purchase money was paid ; but the plaintiff gave credit for the amount to the defendants in his claim for damages. The defendants contended, that the sale was a mere sham sale, without authority and void ; and that the plaintiff could recover only for a partial loss. The court in their charge to the jury omitted to give any direction on this point ; and the jury gave a verdict for a total loss. Held, that the charge was incorrect on account of the omission specified, and a new trial ought to be granted. Under those circumstances, the court should have stated to the jury the principle of law applicable to the case, *viz.* that when an abandonment is properly made the property is changed, and the abandonment cannot be waived without the consent of both parties express or implied ; and should have then told them, if they found the sale was valid, there was no waiver of the abandonment ; but if it was a mere pretended sale, without authority, with a view to subject the defendants to a total loss ; if no purchase money had been paid ; and the plaintiff had possessed and used the vessel as his own, without any objection or claim from the defendants ; they would be warranted to presume that the parties had waived the abandonment, and the plaintiff would be entitled to recover for a partial loss only.

(a) Ante, <i>p.</i> 184.

*New-Haven,*
*June, 1815.*

King
*v.*
The
Hartford
Insurance
Company.

Much of the evidence on the trial was the same as in the former case. The additional facts are comprised in the following statement. The *Governour Griswold,* having taken in a cargo of salt, was cleared at *St. Ubes* for *New-York,* where she arrived on the 21st of *June* 1812, and lay there twenty-four hours in safety ; during which time, the usual entry was made at the custom-house, and the duties, amounting to less than fifty dollars, were paid on that part of the cargo which was liable to duties. The supercargo immediately wrote to the plaintiff for orders respecting the ship's port of discharge ; and while she was lying in the stream waiting for orders, the captain dismissed and paid off all the hands on board except the mate and cook, and immediately shipped an equal number of good hands to bring the ship round into *Connecticut* river, if so ordered. The plaintiff returned an answer by the first mail, ordering her to *Middletown.* There was evidence to shew that some of the hands were foreigners, whom it was difficult to keep on board, and that some were discharged at their earnest request. The defendants claimed that these facts established *New-York* the port of discharge, and that the risk there ended.

In pursuance of the plaintiff's orders, the ship, after being lightened, proceeded for *Middletown,* and on the 1st of *July,* struck upon the rocks at *Hurl-gate* ; part of her side was knocked in ; her rudder lost ; and about half of her keel broken off. The salt with which she was loaded soon washed out. In this condition she lay on the rocks on the 4th of *July,* when the plaintiff offered to abandon. Before this time she had been stripped of her sails and rigging, which, with her anchors, were safe on shore. On the 8th, she was got off the rocks, and floated down to *New-York.* The carpenter's bill for repairing her bottom amounted to 600 dollars ; his bill for getting her off the rocks amounted to 414 dollars ; the riggers bill for repairing her rigging was less than 400 dollars ; and a bill of blacksmith's work amounted to 117 dollars. Upon these facts, the defendants claimed, that as long as the plaintiff had sufficient of the ship in his hands to indemnify him against any loss in consequence of his exertions to get off the hull, he had no right to abandon.

The defendants also claimed, that the plaintiff proposed and agreed, that he might get the ship round into *Connecticut* river. The only evidence of such an agreement was the

following letter from the plaintiff to the *Middletown Insurance Company :* " *Hartford, July* 7th, 1812.  *Chauncey Whittelsey* Esq.  Sir, I wrote you on the 4th inst. informing you of the wreck of the *Governour Griswold,* and abandoning the same to the *Middletown* office so far as they are interested, which I presume you have received ; since which my verbal information says, that she will likely be got off soon. The *Hartford* office have authorized me to get the ship into the river as soon as possible, if practicable ; and in short, to do whatever shall be needful, without militating against the abandonment.  The object of this letter is to inquire whether you have any objection ; as it is necessary information should be immediately given to the captain, or some other agent in *New-York.*  Yours respectfully, *H. King.*"  The defendants contended, that if the risk did not terminate in *New-York,* they, by virtue of the agreement here disclosed, made themselves liable to pay the expenses of attempting to get the ship off, whether such attempt succeeded or not ; although they admitted, that they refused to advance money, lest they should thereby recognize a liability upon themselves.  They further contended, that this evidence proved that the plaintiff had waived the abandonment, and could not claim for a total loss.  The plaintiff, on his part, introduced evidence to shew, that the *Middletown Insurance Company* had insured the same ship, and refused to allow him to get her off, as he proposed in his letter to them ; and that for this reason, as well as because the defendants refused to furnish him with money for the purpose, he never did any thing with the ship.

After the ship was taken to *New-York,* she was set up for sale at auction, by the captain, as the plaintiff claimed, by the advice and under the direction of the port-wardens ; was bid off by *John King,* without the plaintiff's knowledge or consent, at about 2,700 dollars ; and was soon afterwards delivered to the plaintiff by *John King,* under whom the plaintiff has ever since claimed and held her as his own.  It did not appear that any purchase money was ever paid, either by *John King* or the plaintiff ; but the latter gave credit for the amount to the defendants in his claim for damages.  The defendants contended, that the sale was a mere sham sale, made without any authority, and of no efficacy ; and that the plaintiff must, therefore, be consider-

*New-Haven, June, 1815.*

King
*v.*
The
Hartford
Insurance
Company.

New-Haven,
June, 1815.

King
v.
The
Hartford
Insurance
Company.

ed as having repossessed himself of his ship, and could now recover only for his expenses and for repairs.

The court charged the jury as follows : " It is contended, that it is in proof that the greater part of the crew of the vessel were discharged and paid off at *New-York* ; and that, although others were engaged in their stead, yet this fact makes *New-York* the port of discharge, and puts an end to the policy. On this point, the court are of opinion, that the dismission and paying off of any part of the crew at the port of arrival do not of course terminate the voyage and vacate the policy.

" It is also contended, that the plaintiff, by agreement with the defendants, and as their agent, got the vessel off the rocks ; and that this is a waiver of the abandonment, and makes the loss partial only. The court are of opinion that the agreement offered in evidence is no waiver of the abandonment. It being thus decided by the court, that the law is so that the voyage was not ended at *New-York*, your verdict will, of course, be for the plaintiff. In that case, the question will arise whether the plaintiff is entitled to recover for a total loss, or for a partial loss only. As the other questions of law in the present case are similar to those which were made on the trial of a cause between the plaintiff and the *Middletown Insurance Company*, for an insurance on the same ship and adventure, the court will instruct you in the words of the charge in that case."(a)

The jury found a verdict for the plaintiff, with damages for a total loss. The defendants moved for a new trial, on the ground of a misdirection ; and the questions of law arising on such motion were reserved for the consideration and advice of the nine Judges.

*Dwight* and *T. S. Williams*, in support of the motion, contended, 1. That although it had been decided in the suit against the *Middletown Insurance Company*, that the ship's having cleared out for *New-York*, and having gone there when near the mouth of *Connecticut* river, her making entry at the custom-house there, and her lightening and waiting for orders there, did not constitute *New-York* her port of discharge ; yet that these facts, together with the fact that most of the crew were there discharged, was sufficient to shew that *New-York* was her port of discharge ; at least, it was

(a)   Reported ante, p. 186 to 189.

New-Haven,
June, 1815.

King
v.
The
Hartford
Insurance
Company.

evidence to be left to the jury, from which they might infer that fact. The court in their charge to the jury, instead of directing them to weigh these circumstances combined, have merely said, that the dismission of any part of the crew does not, of course, terminate the voyage.

2. That if the plaintiff was entitled to recover on the policy, it was for a partial loss only. The contract of insurance is a mere contract of indemnity. 2 *Burr.* 697. 1210. 1213. 3 *Mass. Rep.* 59. The doctrine of abandonment is liable to great abuse. 2 *Marsh. Ins.* 561. (*Condy's* edit.) Justice *Buller* thinks it would have been wiser not to have allowed an abandonment in any case. 1 *Term Rep.* 615, 616. And Lord *Ellenborough* says the privilege is not now to be enlarged. 10 *East* 343. 2 *Marsh. Ins.* 578. *d.*

In the former case, it was said, that an abandonment might be made, if the ship was in extreme hazard of being lost, as the insured would in that event run the risk of losing the expense of attempting to get her off. But here he did not run the risk of losing that expense ; as the defendants had agreed that he might get the ship off, and bring her into *Connecticut* river. By this agreement they made themselves responsible for the expense.

Besides, in this case it appears, that all the upper part of the ship, with her anchors, &c. were safe on shore ; in short, all was safe except the mere hull, before the abandonment. The plaintiff, then, could be in no danger of eventual loss, if he did not succeed in getting off the ship ; for the master would have been justified in making use of the part saved in endeavours to preserve the rest. He would have a right, in the absence of others means, to apply the part saved to the payment of the persons employed on the ship ; and if all his exertions had been fruitless, and the plaintiff had then abandoned, so much the less would have been saved for the underwriters.

3. The court should have left it to the jury to determine whether the plaintiff, having repossessed himself of his ship under a void and illegal sale, had not waived the abandonment. As to an illegal sale see 4 *Binn.* 391, 5, 9. 3 *Mass. Rep.* 54. By an offer to abandon the plaintiff puts himself in a condition to insist upon it. Per Lord *Ellenborough,* 10 *East* 341. An offer once made *and accepted,* is irrevocable except by mutual consent. 2 *Marsh. Ins.* 613. It may be

New-Haven,
June, 1815.

King
v.
The
Hartford
Insurance
Company.

*revoked* by consent, or *waived*. 1 *Johns. Ca.* 152. It can be taken away but by consent of the insured, or by a *reasonable implication*. 6 *Mass. Rep.* 482. 4 *Cranch* 45. These opinions, with the cases of *Saidler & al.* v. *Church*, 1 *Caines* 297, 303. 2 *Caines* 286, 290. *Abbott* v. *Broome*, 1 *Caines* 292, 303. and *Ogden & al.* v. *The New-York Fire Insurance Company*, 10 *Johns.* 177, 9. shew that the party may do acts from which his consent to waive an offer to abandon will be implied; and a purchase and holding of the property under a sale which was illegal and of no validity, it is contended, is one of these acts.

*Terry* and *J. Trumbull*, contra. 1. The effect of the entry and payment of duties, lightening and waiting for orders, has already been decided upon by this Court in the suit against the *Middletown Insurance Company.* The only new fact in this case is the discharge of the hands; as to which, it may be remarked, the insured does not warrant that he will have the *same* hands throughout the voyage, only that he will have sufficient hands, that the ship shall be seaworthy, &c. 1 *Marsh. Ins.* 153. 165. *b.* 166. (*Condy's* edit.) The loss did not happen for want of men, nor for want of skill. The captain exercised his discretion. The discharge of the hands was, at most, only evidence of an *intention* to terminate the voyage; and the court have decided, that the intention of the master relative to that subject is wholly immaterial.

2. The fact that some part of the ship was safe on shore did not prevent an abandonment. Had the ship gone to pieces the insured might have abandoned, unless the damage was less than one half her value; and if she were in extreme hazard of going to pieces, he might, in that case also, abandon, after notice to the insurers, and a refusal by them to assist. The direction to the jury in the former case, adopted in this, was to find for a total loss, if the *ship* was in extreme danger, not the mere hull. The saving of a part did not excuse the defendants from being at expense: and the abandonment remained good, unless the defendants got off the ship, or offered to be at the expense of doing it. 6 *Mass. Rep.* 482, 3. They have done neither. But the defendants claim, that the plaintiff had enough of their property to secure him in getting off the ship. It does not appear what sum was necessary; nor what amount was saved; nor that either

New-Haven,
June, 1815.

King
v.
The
Hartford
Insurance
Company.

party knew that any thing was saved. But if all this were, as is contended, the plaintiff was not bound to advance his money to repair the defendants' ship, because he had security in his hands; nor indeed could he be secured by such possession for moneys advanced by him without the defendants' request. It is not true, that the plaintiff had any of the defendants' property; for if the abandonment took effect, the property was transferred to the defendants, and the master became their agent; if the abandonment was not effectual, then the master remained the plaintiff's agent, and in possession of the plaintiff's property.

Nor did the agreement made by the plaintiff with the defendants destroy the effect of the abandonment; for both the *Middletown* office and the defendants refusing to advance money, nothing was done under this agreement; and by the very terms of the agreement, it was not to prejudice the abandonment. Besides, the defendants did not appoint the plaintiff their agent in such a sense as to bind them for any expense; they merely permitted him to get the ship into the river.

3. The sale and purchase in *New-York* did not amount to a waiver of the abandonment. Unless the statement in this motion that the sale was a sham sale, varies the present case from the former one, this point has been decided. There is no pretence that the sale was fraudulent in any respect. It is contended only, that it was void for want of authority in the master; and an inference is drawn from the plaintiff's possession of the ship under this sale, that he has waived his claim for a total loss. The plaintiff contends, that the master had power to sell; but if he had not, still as it appears that the plaintiff took possession under a belief that he had acquired a new title, it cannot be inferred that he intended to give up his abandonment. If the purchase which he made of *John King* is void, then he gained no title to the ship. But it does not follow that he loses his claim on the defendants.

SWIFT, Ch. J. Several questions arising in this case were settled in the case of *King* v. *The Middletown Insurance Company.* It is necessary to notice those points only which did not arise in that case.

A discharge of the seamen without replacing them by

*New-Haven,*
June, 1815.

King
*v.*
The
Hartford
Insurance
Company.

others would be evidence of the termination of a voyage ; but a discharge of part of them, and replacing them by others, so that the voyage could be continued, if directed, is a circumstance which does not conduce to prove that the voyage was terminated.

The letter from the plaintiff to the *Middletown* insurance office explicitly states, that the agreement made with the defendants was not to militate against the abandonment. To give it the effect now contended for would defeat the abandonment. This would be contrary to the agreement on which the defendants rel .

The property taken from the vessel after she went on the rocks, was not a fund in the hands of the plaintiff to pay the expense of getting her off. He had no right to dispose of it for that purpose ; nor could it then have been determined whether it would have been sufficient. If the vessel had been lost, the plaintiff, in a suit on the policy, could not have retained as much of the property as the amount of the expense in attempting to get her off ; but the property saved must have been accounted for, in the estimate of the loss, without allowing for such expense ; it could not, therefore, have been a fund.

But admitting the insured would have a right to retain in such cases, there would be instances where he might be exposed to loss. If whenever a vessel is stranded, and some of the property saved, he is bound to attempt to get her off, then should he fail in the attempt, and the amount of the expense should exceed the value of the property saved, he must suffer a loss to that amount ; because in an action on the policy he can recover only for the total loss, and not for the expense beyond the value of the property saved. But as an insurance is a contract of indemnity, no construction ought to be given to it, which will in any case necessarily subject the insured to a loss.

With respect to the waiver of the abandonment, it appears, as stated in the motion for a new trial, that after the vessel was got off the rocks, she was set up for sale at auction by the captain ; and the plaintiff claimed, that it was done by the advice and direction of the port-wardens ; that she was bid off by *John King*, without the knowledge or consent of the plaintiff ; that he delivered her to the plaintiff, who has ever since had her, and claimed to be the owner under *John*

*King* ; that it did not appear that any purchase money was ever paid ; and that the plaintiff gave credit therefor in his claim for damages. The defendants claimed, that the sale was a mere sham sale, without authority and void ; and the plaintiff having repossessed himself of the ship, can only claim for a partial loss. The testimony is not detailed, nor is it stated that any facts were agreed to by the parties. On this point the court gave no direction to the jury ; and if it might have been material, the charge was incorrect.

*New-Haven,*
June, 1815.

King
*v.*
The
Hartford
Insurance
Company.

When an abandonment is properly made, the property is changed, and the abandonment cannot be waived without the consent of both parties, express or implied. If, after the abandonment, the insured continue in possession of the vessel, without sale, using it as his own, and the insurers interpose no objection and make no claim, it may be presumed that both consent to give up the abandonment. So by the same reason, if there be a pretended or void sale, merely with a view to enable the insured to convert a partial into a total loss, no purchase money having ever been paid, the insured continuing to possess and use the vessel as before, and the insurers interposing no objection or claim ; this may be deemed a waiver of the abandonment. Now, it does not appear but that from the evidence the jury would have been warranted to make the inference that the parties consented to waive the abandonment. Such, at any rate, was the claim of the defendants. The court, then, ought to have stated to them the principle of law applicable to the case, and then have submitted to them the question of fact upon the evidence before them. They should have told them, if they found the sale was valid, there was no waiver of the abandonment ; but if it was a mere pretended sale, without authority, with a view to subject the defendants to a total loss ; if no purchase money had been paid ; and the plaintiff had possessed and used the ship as his own, without any objection or claim from the defendants ; they would be warranted to presume that the parties had waived the abandonment, and the plaintiff would be entitled to recover for a partial loss only. As the court gave no such direction, a new trial ought to be granted.

In this opinion the other Judges severally concurred.

New trial to be granted.